Defendant-appellant, Wanda Free, appeals from her conviction and sentence upon two counts of Felonious Assault. She contends that the trial court erred by allowing the introduction of evidence depicting one victim's injuries, and excluding evidence regarding the other victim's prior violent acts. She further claims that the trial court erred by charging the jury with confusing and inaccurate instructions. Finally, she contends that she was prejudiced by numerous acts of prosecutorial misconduct.
We conclude that the trial court did not err in making its evidentiary rulings or in instructing the jury. We further conclude that the prosecutor did not act improperly. Accordingly, the judgment of the trial court is Affirmed.
 I
On May 25, 1995, Wanda Free, was driving her mother's van when she struck two pedestrians. The first pedestrian was Free's ex-boyfriend, Derrick Smith, who suffered a broken arm as a result of the collision. The second pedestrian was six-year old, Nicole Gibson. The force of the collision caused Gibson's leg to be pinned between a transformer pole and the fender of the van.
Earlier in the day, Free's mother, Dorothy Lee, asked her and a family friend, Aaron Dungey, to go to a local store to play the lottery. Free did not have a driver's license, so Dungey was asked to drive Lee's van to the store. Free's two daughters and her nephew accompanied her and Dungey. On the way to the store, Free asked Dungey to stop by her apartment on Ravenwood Avenue. Dungey parked the van in front of the apartment. Free was going up the steps to the apartment when Smith appeared. The couple entered the apartment.
According to Free, the door to the apartment had been broken into and damaged. She also testified that the apartment appeared ransacked. Free and Smith began arguing over some "love letters" of Free's, which indicated that she had recently miscarried during a pregnancy involving another man. Free left the apartment with a knife and returned to the van.
Free left one daughter with Smith while she, Dungey and the other children went to the store. Afterward, when they went back to the apartment to pick up the child, Free and Smith began arguing again. Free, Dungey and the children drove off in the van. According to Free, Dungey suggested that they go back to close up the apartment, at which time Free threatened him with a knife and demanded that he let her drive. Dungey pulled into an alley where they turned the van around in a parking lot. Free began to drive back down the same alley when she saw Smith and stopped. Smith walked over to the front of the van. According to Dungey, Smith was yelling and cussing at him for allowing Free to drive the vehicle. According to Free, Smith said, "draw your last breath bitch". At that point, Free hit the accelerator and struck Smith. The van traveled across Ravenwood Avenue with Smith on the windshield and struck Gibson.
According to the interviewing detective who recorded Free's statement at the scene, Free stated that she was afraid of Smith, and that she hit him because she was "pissed off". Free denied stating that she was "pissed off."
Free was indicted upon one count of Felonious Assault against Smith, and upon one count of aggravated Vehicular Assault, with a cause harm specification, against Nicole Gibson. The indictment was later amended to charge Free with two counts of Felonious Assault, in violation of R.C. 2903.11(A)(2).
At trial, Free presented a defense of self-defense, based upon evidence that she suffered from Battered Woman Syndrome. The evidence indicated that Free's relationship with Smith, who is the father of one of her daughters, was violent. There was also evidence that Smith physically abused Free, and that she was required to seek medical treatment for injuries on at least three occasions. Free also presented the testimony of a clinical psychologist, who testified that she did suffer from Battered Woman Syndrome and that she perceived Smith to be a serious threat to her on the day of the incident.
During trial, the defense requested that the jury be permitted to view the crime scene. While at the crime scene, defense counsel and the prosecutor noticed that Gibson was within viewing distance of the jury, on the front porch of her grandmother's house. The child was wearing shorts or a short skirt that exposed her injured legs. The prosecutor and defense attorney also noticed that two television news crews were present at the scene and were attempting to interview Gibson and her grandmother. In light of the trial court's order that the victims not speak to the media during trial, the prosecutor approached the grandmother to remind her that she could not speak to the media.
Afterward, Free moved the trial court to declare a mistrial. The court denied the motion. Free then asked the court to conduct a voir dire examination of the jury to determine whether any of them had observed Gibson during the jury view. The jurors indicated that they had noticed the news crews trying to interview some people in the area of the crime scene. When asked if the incident would have any effect on their ability to sit as fair and impartial jurors, the panel indicated that it would not influence them. Further, the trial court instructed the jurors that the incident was not to be used as evidence in the case. The record does not reveal whether any of the jurors actually observed Gibson on the porch.
The jury found Free guilty as charged in the indictment, and the trial court sentenced her accordingly. From her conviction and sentence, Free appeals.
 II
Free's First Assignment of Error is as follows:
 THE TRIAL COURT ERRED BY ADMITTING INTO EVIDENCE TESTIMONY AND GRUESOME PHOTOGRAPHS OF GRAVE AND DISFIGURING INJURIES SUFFERED BY A CHILD VICTIM, TOGETHER WITH EXHIBITION OF THE CHILD'S INJURIES TO THE JURY, BOTH UPON JURY VIEW AND DURING THE TRIAL, AND SUCH ERROR DENIED TO APPELLANT A FAIR TRIAL AS THE PROBATIVE [SIC] OF SUCH TESTIMONY, PHOTOGRAPHS AND EXHIBITIONS WAS GREATLY OUTWEIGHED BY THE DANGER OF UNFAIR PREJUDICE ESPECIALLY IN LIGHT OF APPELLANT'S OFFER TO STIPULATE THAT SUCH INJURIES CONSTITUTED SERIOUS PHYSICAL HARM AND THE STATE'S EXPLANATION OF WHY SUCH TESTIMONY, PHOTOGRAPHS AND EXHIBITIONS WERE PROBATIVE OF ANY ISSUE UNDER THE FACTS.
Free contends that the trial court erred by allowing, over objection, the introduction of two photographs of the crime scene. She also claims that the court erred by allowing the jury to view the child's injuries during trial, and by allowing testimony regarding the injury. Finally, she contends that the trial court erred when it failed to grant her motion for a mistrial after it was established that the child was present near the crime scene while the jury was viewing the area.
We first address the two contested photographs. As noted above, when Free collided with Nicole Gibson, the child was pinned between the van driven by Free and a transformer pole. One photograph depicts the resulting damage to the transformer pole while the other depicts the damage to the van. In both photographs, pieces of Nicole's flesh are readily visible on the portion of the pole and the vehicle bumper where her leg was pinned.
Free argues that the two contested photographs are gruesome, and that their introduction was more prejudicial than probative. She also argues that the State had other, "non-gruesome" photographs that it could have used to show the condition of the pole and the van. The State claims that the photographs were relevant to show the elements of the crime of felonious assault; i.e., mens rea and physical injury. See R.C. 2903.11.
The admission of photographs is left to the sound discretion of the trial court. State v. Biros (1997), 78 Ohio St.3d 426, 444, citing State v. Landrum (1990), 53 Ohio St.3d 107, 121. The trial court, and this court on appeal, must determine whether the probative value of the photographs in question is substantially outweighed by the danger of unfair prejudice to the defendant.State v. Morales (1987), 32 Ohio St.3d 252, 257. The mere fact that a photograph is gruesome is not sufficient to render it per se inadmissible. State v. Woodards (1966), 6 Ohio St.2d 14, 25.
Upon review of the photographic evidence, we find that the two challenged pictures, although not attractive, are not particularly gruesome. We further find that since there was conflicting testimony regarding Free's speed at the time of the collisions with Smith and Gibson, the photos could reasonably be considered probative to help the jury determine which testimony was most credible.[1] The photos also are arguably relevant to show the jury that Gibson did suffer physical harm from the collision. Moreover, the photographs are not cumulative with each other. Thus, we conclude that their relevancy and probative value outweigh the danger of unfair prejudice to Free, and the trial court was well within its discretion in allowing the photographs to be introduced.
We next address Free's claim that she was unfairly prejudiced when the trial court allowed the jury to view, and to hear testimony regarding, Nichole's injuries. Free contends that this evidence had no probative value and served only to inflame the passions of the jury. She further argues that she offered to stipulate that Gibson was harmed by the collision.[2]
We have reviewed the entire transcript, and we conclude that the purpose of the exhibition and the testimony appears to have been to establish the "physical harm" element of Felonious Assault. We find that this evidence was probative, and that it was not unduly prejudicial to Free.
The final issue raised by Free in this assignment is her claim that the jury was prejudiced during its visit to the crime scene because Gibson was out on her grandmother's front porch nearby wearing an outfit which exposed her legs to view. Free contends that the trial court should have granted her motion for a mistrial. In State v. Glover (1988), 35 Ohio St.3d 18, the Ohio Supreme Court has clearly held that the decision to grant a mistrial is a matter of discretion:
 In evaluating whether the declaration of a mistrial was proper in a particular case, this court has declined to apply inflexible standards, due to the infinite variety of circumstances in which a mistrial may arise. * * * This court has instead adopted an approach which grants great deference to the trial court's discretion in this area, in recognition of the fact that the trial judge is in the best position to determine whether the situation in his courtroom warrants the declaration of a mistrial.
Id., at 19. When a trial court is exercising discretion, the test for finding an abuse of that discretion requires a finding that the trial court's decision was unreasonable, arbitrary or unconscionable. State v. Xie (1992), 62 Ohio St.3d 521, 527.
In this case, we find no abuse of discretion. There is no clear evidence that the jurors actually saw Gibson. The jurors, furthermore, clearly indicated that whatever they saw would not influence them in their deliberations. Moreover the trial court admonished the jury not to consider what they saw as evidence, and again during the jury instructions told them that the jury view of the crime scene was not to be considered evidence.
Free's First Assignment of Error is overruled.
 III
Free's Second Assignment of Error is as follows:
 PROSECUTORIAL MISCONDUCT AND ERROR OCCURRED IN THE EXAMINATION OF WITNESSES AND IN THE INTRODUCTION OF IRRELEVANT AND INFLAMMATORY EVIDENCE WHICH DENIED APPELLANT A FAIR TRIAL.
Free contends that she was denied a fair trial as a result of numerous instances of prosecutorial misconduct. Specifically, she claims that the prosecutor acted improperly by: (1) making references to, and asking questions about, the fact that Gibson's flesh could be seen in the pictures of the transformer pole and the van bumper; (2) making remarks about the willingness of its witnesses to testify; (3) asking a witness about a prior out-of-court statement; (4) asking Free about welfare theft, aggravated burglary, a previous miscarriage, and whether she dated other men; (5) making disparaging comments about defense counsel; (6) asking whether the van was covered by insurance; (7) making a comment about how society views women who have been battered; (8) asking about statements made by Free at the scene; and (9) making an improper closing argument.
"The test for prosecutorial misconduct is whether the remarks were improper, and, if so, whether they prejudicially affected substantial rights of the accused." State v. Eley (1996),77 Ohio St.3d 174, 187.
Free contends that there were approximately fourteen references to the remnants of Gibson's flesh left on the pole and bumper that were prejudicial and made in an effort to inflame the passions of the jury. Our review indicates that the references were not made indiscriminately. Rather, the majority were made in the context of witness descriptions of the accident scene and Gibson's injuries. However, one reference to the flesh on the van was made during the State's cross-examination of Free after she had testified that even if she looked at the pictures of the van she could not remember what part of the van impacted with Gibson. The prosecutor then asked her if the flesh on the van would indicate the point of impact. The trial court sustained the defense's objection to the reference, and ordered the jury to disregard it. When one considers that the trial transcript is 1,399 pages long, and that the references to the victim's flesh are few, it seems unlikely that the passions of the jury were inflamed by these questions.
The next area of contention involves considering a portion of the prosecutor's opening statement in conjunction with a portion of the State's direct examination of Dungey. Specifically, Free refers to the following statement made by the prosecutor:
 Other people were in the area too. Maurice Creighton (sic), Michael Angier. We hope they will come in and you what happened. And everybody sees it little differently. But we hope they will come in and tell you.
Free also refers to Dungey's testimony that since he resided in Florida at the time of trial, the prosecutor paid for his bus ticket to Ohio and his meals while traveling. She argues that the combination of the opening statement and Dungey's testimony "insinuate[d] to the jury that they were having difficulty with witnesses, and that they even had to pay this witness to come back and testify and that, therefore, not only was his testimony crucial but it had to be believable." She further contends that the State should have disclosed the information about Dungey during discovery pursuant to Brady v. Maryland (1963),373 U.S. 83.
We do not agree with Free's claim that the testimony and opening statement can be construed as establishing that Dungey's testimony was entitled to great deference. A review of the transcript fails to demonstrate even a remote connection between the comment made during opening statement and Dungey's testimony. Thus, even if we construe the comment made during opening statement as supporting an inference that the State was "having difficulty with witnesses," there was no indication that the State had any difficulty getting Dungey to testify.
We further disagree with Free's claim that the State was required to disclose, before trial, that it had paid Dungey's expenses. Brady, supra, requires the disclosure of exculpatory evidence which is "material either to guilt or to punishment".Id., at 87. "Exculpatory" is defined as "clearing or tending to clear from alleged fault or guilt." Black's Law Dictionary (5 Ed. Abridged. 1983) 292. In applying Brady, the Ohio Supreme Court has held that "the key issue in a case where exculpatory evidence is alleged to have been withheld is whether the evidence is material." State v. Johnston (1988), 39 Ohio St.3d 48, 60. Free has not demonstrated that such evidence is either exculpatory or material. We find that while such evidence may tend to show the "bias, prejudice, interest, or any motive to misrepresent" of the witness pursuant to Evid.R. 616, there is no basis for concluding that the evidence is exculpatory in nature.
We next address Free's assertion that the prosecutor improperly questioned a witness about his prior out-of-court statement. During the direct examination of Maurice Alexander, an eyewitness who testified for the State, the prosecutor attempted to question him about whether he had made a statement to the police characterizing the crash as intentional. The defense objected to the question on the basis that Alexander had no knowledge of Free's state of mind; i.e., whether she acted intentionally. Free contends that despite repeated objection, the prosecutor continued to ask leading and improper questions of the witness, which essentially informed the jury that Alexander had told the police that the crash was intentional. The State admits that this evidence was not admissible.
After reading the entire colloquy of questions, objections and court rulings on this subject, we cannot conclude that the prosecutor intentionally tried to ask leading or improper questions. Instead, the record reflects that the prosecutor was attempting to elicit testimony while also trying to comply with the court's rulings on each objection.
Moreover, during her testimony, Free basically admitted that she intentionally accelerated the van. Her defense rests largely on her claim of self-defense, which "presumes intentional, willful use of force to repel force or escape force." State v. Champion
(1924), 109 Ohio St. 281, 286-287. Therefore, even if we were to conclude that this series of questions rises to the level of prosecutorial misconduct, we cannot say that it was prejudicial.
Free next contends that, in light of the fact that she had filed a motion in limine to prevent the introduction of evidence "regarding welfare theft and her alleged arrest for aggravated burglary," the prosecutor acted improperly by cross-examining her on those issues. The record reveals that the trial court did not rule on the motion in limine prior to the prosecutor's cross-examination. The record further reveals that Free stated, when asked, that her sources of income during 1987 and 1988 included wages from working and welfare payments. At that point, the trial court sustained the motion in limine, and it appears that no questions were asked regarding the alleged burglary. As noted by the State, we have held that, pursuant to Evid.R. 608(B), "[a] witness may be impeached during cross-examination by reference to specific instances of conduct `if clearly probative of truthfulness or untruthfulness.'". State v. Hall (1995),106 Ohio App.3d 183, 189. "Allegations of fraud, if admitted to, clearly indicate that the witness is not a truthful person." Id., at 190. Given that the trial court had not previously ruled on the motion to exclude this evidence, and that this evidence was admissible under Evid.R. 608(B), we cannot say that the prosecutor acted improperly.
Free also claims that the prosecutor improperly attempted to "defame" her by asking questions about her previous miscarriage and whom she was dating. However, in opening statement, defense counsel informed the jury that on the day in question, Smith had found love letters indicating that Free had a boyfriend, and that she had suffered a miscarriage during a pregnancy involving another man. This evidence appears to have been a part of the defense strategy to prove that Free suffered from Battered Woman Syndrome. The defense wanted to show that Free was acting in self-defense; a claim that was obviously bolstered by the defense argument that Smith was a "jealous man" who became enraged and violent over the letters. Since Free "opened the door" to these issues, she cannot complain because the State cross-examined her on the subject.
Free next contends that the prosecutor acted improperly when she asked questions "about who were the true victims in the case," and made disparaging comments about defense counsel testifying. Free fails to refer us to the place in the record that would support her argument that the prosecutor made a comment about the "true victims." See App. R. 16(A)(3). Further, the trial court sustained her objection to the prosecutor's comment that defense counsel was testifying, and ordered it stricken from the record. Moreover, Free fails to set forth any claim as to how these instances prejudiced her. Thus, we conclude that she has failed to demonstrate prejudicial misconduct.
Free next argues that the prosecutor's question regarding insurance coverage for the van was improper. She does not cite any authority in support of her argument, and she again fails to demonstrate how she was prejudiced by the question. We find that the question was actually beneficial to the defense. There was testimony during trial that Free did not back the van away from Smith because she did not know how to operate the van in reverse. Her inability to back the van up could arguably support her claim that she was acting in self-defense because she was unable to retreat and thought that her only means of escape was to drive the van through Smith. The prosecutor actually supported this claim by showing that Lee never allowed Free to drive the van because Lee's insurance did not provide coverage for Free. In other words, this evidence could be viewed as support for Free's claim that since she never drove the van prior to that day, she was not sufficiently familiar with it to know how to operate it in reverse. Thus, we cannot say that the prosecutor's actions prejudiced Free.
The next claim of prosecutorial misconduct involves Free's claim that the prosecutor made statements regarding "what society believes battered women do purportedly speaking for society as a whole." We find this argument without merit. During the prosecutor's cross-examination of the defense expert on Battered Woman Syndrome, the prosecutor did state that she was "going to tell you what we as a society usually think of a battered woman using force." The defense objected to the statement, and the trial court essentially told the prosecutor to ask a different question. The prosecutor rephrased the question to ask about society's preconceived beliefs about battered women who use force against their abusers. We have reviewed the entire line of questioning and conclude that, although inartful, it was merely designed to determine whether women who suffer from Battered Woman Syndrome normally use force to defend themselves during actual episodes of physical abuse. We find that this was a valid question given the evidence that at the time she hit him, Smith was not physically abusing Free.
Free next contends that the prosecutor improperly asked questions about oral statements that she made at the scene. Free argues that she filed a motion in limine to prevent the State from introducing any oral statements made to witnesses unless such statements were provided to defense counsel during discovery. However, the portion of the transcript to which Free refers us does not support her claim.
Finally, Free claims that the State's closing argument is "replete with reference to personal opinion and to the allege [sic] lies told by" Free. However, once again she fails to refer us to the place in the record where each error is recorded. See App. R. 16(A)(3). Moreover, she does not make any claim of prejudice in regard to the argument. Thus, we do not find any error.
Free's Second Assignment of Error is overruled.
 IV
Free's Third Assignment of Error is as follows:
 THE COURT ERRED IN ITS DECISION TO DISALLOW EVIDENCE OF PRIOR VIOLENT ACTS OF ONE OF THE COMPLAINING WITNESSES, DERRICK SMITH, AND SUCH DECISION DENIED TO APPELLANT A FAIR TRIAL.
Free contends that the trial court erred because it did not permit her to introduce the testimony of her former roommate, Robin Butler, regarding a specific instance of violence between Smith and Free that occurred in 1993 while Butler and Free lived on Sundale Avenue.[3]
Free argues that Butler's testimony would serve to impeach Smith's credibility by contradicting his account of the Sundale Avenue incident. She further argues that the although the State and Smith "went through each instance of violence which occurred between [him and Free]," they attempted to downplay the physical assaults and to portray both parties as being mutually at fault for the violence. Thus, Free contends that Butler's testimony was necessary to rebut the improper inference of mutual fault, reveal Smith's "violent nature," and show that the violence was escalating.
Smith's testimony regarding the Sundale Avenue incident is unquestionably different from Free's testimony. Smith testified that he and Free got into a "nasty" argument, and that he was "pretty upset." He later characterized the event as a "little quarrel," and stated that the only "physical thing" he did to her was to grab her hair. He further testified that Free's only defense was to "spill" some hot soup on him. He also admitted that he damaged the door to her home, and then crawled through her window to get in. Smith also testified that he ran from the police because there was an outstanding warrant for his arrest.
Free testified that when Smith came over to her home he pulled her hairpiece off and starting punching her. She testified that he left, but that he came back and kicked her in the side and slammed her head into a wall. She testified that he left again, and that when he tried to come back she poured hot soup on him. She further testified that he was arrested and charged with Felonious Assault and Criminal Damaging.
When Free attempted to present the testimony of her former roommate, Robin Butler, the trial court stated that it would not allow the witness to testify at that time. The trial court also stated that it would be willing to reconsider its ruling as the trial progressed. However, there is no indication that the defense attempted to recall the witness. Free made a proffer of the testimony that she expected from Butler, which merely corroborated her account of the incident.
The trial court, however, did permit Free to introduce the police report and hospital records regarding the attack. The police report indicates that Smith was arrested for Felonious Assault after a "brief foot chase." It further indicates that Free was "transported to Good Samaritan Hospital by Dayton Medic and treated for possible broken ribs and a broken right arm." The medical records indicate that Free suffered from multiple contusions.
We further note that there was ample evidence of Smith's violent nature that was admitted into the record. For example, when defense counsel showed Smith numerous photographs depicting injuries to Free's face, Smith admitted that he had inflicted them upon her "on an accident." Several of the photographs were introduced into evidence. Smith further admitted that he had twice been convicted of domestic violence involving Free. The defense also presented testimony from Dayton police officers that Smith was arrested on March 31, 1989, and October 23, 1991, on domestic violence calls. One officer further testified that after he had Smith in custody for the 1991 incident, he personally heard Smith make the following statement to Free: "When I get out of jail I'll really fuck you up."
Butler's testimony, as proffered, concerned only one specific instance of violence. There is no indication that she had any knowledge of any other acts of violence. Therefore, her testimony would not have been probative to show that the violence between Smith and Free was escalating or to contradict the inference of "mutual fault" regarding any other violent episode. Butler's testimony was not admissible to impeach Smith's character for truthfulness. Evid.R. 608(B). Furthermore, the Sundale incident was not admissible to prove Smith's character to show that he acted in conformity therewith. Evid.R. 404(B). Moreover, since the record is replete with evidence that Smith was violent, and that he did physically attack and injure Free on numerous occasions, including the time she lived on Sundale Avenue, we conclude that Butler's testimony would have been cumulative. Therefore, we cannot say that the trial court abused its discretion by excluding her testimony. Evid.R. 403(B).
Free's Third Assignment of Error is overruled.
 V
Free's Fourth Assignment of Error is as follows:
 THE COURT ERRED IN ITS INSTRUCTION TO THE JURY REGARDING THE ISSUES OF TRANSFERRED INTENT, AGGRAVATED ASSAULT AND SELF-DEFENSE, AND SUCH ERROR DENIED TO APPELLANT A FAIR TRIAL.
Free contends that the trial court erred by giving instructions that were confusing and inaccurate, and by failing to utilize her proposed jury instructions.
Free assigns as error the trial court's instruction regarding the doctrine of transferred intent. Free's argument is not entirely clear. However, it appears that she believes that the doctrine should not have been applied in this case because it is possible for a person charged with crimes against two persons to have "intent as to each of the victims independently of the other." She further argues, without citing any authority in support, that the doctrine of transferred intent does not apply to crimes that require a culpable mental state of knowingly.
"[I]t is clear that a court's instructions to the jury should be addressed to the actual issues in the case as posited by the evidence and the pleadings." State v. Guster (1981), 66 Ohio St.2d 266,271. "In a criminal case, if requested special instructions to the jury are correct, pertinent, and timely presented, they must be included, at least in substance, in the general charge." Id., at 269, emphasis added. While the decision whether to give a jury instruction is within the sound discretion of the trial court, a reviewing court may reverse the trial court's decision upon a showing of an abuse of discretion. Id., at 272.
"The doctrine of transferred intent indicates that where an individual is attempting to harm one person and as a result accidentally harms another, the intent to harm the first person is transferred to the second person and the individual attempting harm is held criminally liable as if he both intended to harm and did harm the same person." State v. Mullins (1992), 76 Ohio App.3d 633,636. A person cannot escape the "legal and moral responsibility" of her acts simply because the intended victim escapes harm while an innocent child is seriously injured. Statev. Richey (1992), 64 Ohio St.3d 353, 364.
Thus, while we agree that Free was certainly permitted to advance the theory that she had independent intent to harm two different persons, we must nevertheless, find that the State was entitled to an instruction appropriate to its theory of the case; i.e., that while knowingly causing physical harm to Smith by means of a deadly weapon, Free caused physical harm to Gibson. We conclude that the facts could reasonably support a finding that Free's intent transferred from Smith to Gibson, and that the State was therefore entitled to the instruction.
Furthermore, Free's claim that transferred intent does not apply to crimes requiring a mens rea of knowingly is without merit. Several appellate court decisions have applied the doctrine of transferred intent not only to Felonious Assault cases, but to other crimes with a mens rea of knowingly. See e.g., State v. Jeffries (Dec. 12, 1994), Stark App. No. 00068, unreported; State v. Harris (Nov. 24, 1982), Cuyahoga App. No. 44332, unreported; State v. Cowan (Oct. 25, 1990), Cuyahoga App. No. 57681, unreported. Furthermore, the Committee Comment to 4 OJI (1997) § 409.07 at p. 60, states that the instruction for transferred purpose/intent may be utilized for crimes, including Felonious Assault, for which the degree of culpability is one of knowledge. Free has not advanced any compelling reason that would lead us to conclude that the doctrine of transferred intent has no application in Felonious Assault cases. Therefore, we find that the trial court did not abuse its discretion in so instructing the jury.
Free also contends that the trial court erred in its instruction to the jury regarding the transfer of her self-defense claim as it relates to the Felonious Assault charge for the injuries to Gibson. The basis of her argument is her claim that the trial court incorrectly instructed the jury "that they could find Wanda Free guilty of felonious assault against Nicole Gibson even if they found she was acting in self-defense." In support, she refers us to the following passage from the jury charge:
 Transfer of defense. If you find that defendant knowingly caused physical harm to Nicole Gibson, and if the knowing element results from the doctrine of transferred knowledge or intent, you to [sic] consider whether she has proven the defense of self-defense. In this situation, if the defendant has proven by a preponderance that her use of force against Derrick Smith was justified, then said use of force in self-defense applies to a defense to the count two charge, and she would not be guilty of that count.
 However, if you find that she knowingly caused physical harm to Nicole Gibson and that the element of knowingly was proven by the State by evidence separate from use of the doctrine of transferred knowledge or intent by proof beyond a reasonable doubt, then the defense of self-defense against Derrick Smith does not transfer to the count of felonious assault against Nicole Gibson.
Our interpretation of the above instruction is contrary to Free's. We conclude that the instruction clearly indicates that the defense of self-defense could transfer to shield Free from criminal liability for the injury to Gibson if the jury found that she was guilty of Felonious Assault against Gibson only as a result of the doctrine of transferred intent. It further correctly instructs the jury that if Free acted with an independent intent for each crime against each victim, then the defense would not transfer from one victim to the other. We conclude that Free's interpretation of this instruction is incorrect, and that her claim of error is not merited.
Free next assigns the following instruction as error:
 Reasonable grounds, use of deadly force. To establish self-defense, the following elements must be shown. The Defendant, Wanda Free, was not at fault in creating the situation giving rise to the incident in the alley off Ravenwood Street.
Free contends that this instruction improperly limited the jury's consideration solely to the events that occurred in the alley. She argues that all of the events of the day, including the events in the alley, should have been considered. Free's proposed instruction reads as follows: "To establish self-defense by use of deadly force, the Defendant must show by a preponderance of the evidence, the following: (a) that she was not at fault in creating the situation giving rise to the affray; * * *".
"In Ohio, the affirmative defense of self-defense has three elements: (1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger." State v. Thomas (1997), 77 Ohio St.3d 323, 326. The instruction to which Free objects involves the first element.
We conclude that the trial court's instruction, which is virtually identical to that requested by Free, did not limit the jury's consideration to the events in the alley. Rather it instructed that Free must not be at fault for creating "thesituation giving rise to the incident in the alley;" this wording indicates that the jury was free to consider the events at the apartment leading up to the final confrontation in the alley. It is also a correct statement of the law, and is in accord with the instructions set forth in 4 OJI (1997), § 411.31, at p. 75. Therefore, we find no error.
Free also argues that the trial court gave "a very cursory instruction regarding the crime of aggravated assault as it relates to Nicole Gibson." She further complains that the trial court should have, but did not, instruct the jury that a sudden fit of passion or a sudden fit of rage would also transfer in regard to the aggravated assault. We find this argument meritless. The trial court correctly defined the crime of Aggravated Assault for the jury, and also instructed the jury to consider whether Free acted under sudden passion or sudden fit of rage in regard to that charge.
Free next contends that the trial court erred by giving the following instruction:
 However, if you find that the State of Ohio failed to prove beyond a reasonable doubt all the essential elements of the charge of felonious assault as contained in a particular count of the indictment, or of aggravated assault, then your verdict must be not guilty of the charge of felonious assault and not guilty of aggravated assault, and you will continue your deliberations to decide whether the State has proved beyond a reasonable doubt with respect to that count, all the essential elements of the lesser included offense known as negligent assault.
Free argues that this instruction "seems to say that the jury could find that the State failed in its burden of proof on felonious assault, but that the jury was required to consider aggravated assault." She contends that this is an incorrect statement of the law. Again, after reviewing the record, we do not construe this instruction in the manner Free does.
Instead, we must follow the rule that "[a] single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." State v. Price
(1979), 60 Ohio St.2d 136, paragraph four of the syllabus. Thus, in examining the entire jury charge, we note that the jury was instructed, at Free's request, on the mitigating circumstances of "sudden passion" and "sudden fit of rage." These mitigating factors would, if proved, allow the jury to find Free guilty of Aggravated Assault in violation of R.C. 2903.12(A), but not guilty of Felonious Assault. The trial court, therefore, instructed the jury on the elements of Felonious Assault as well as Aggravated Assault, both of which required the State to prove that Free knowingly caused or attempted to cause physical harm by means of a deadly weapon. Therefore, since the failure to prove the elements of Felonious Assault would necessarily result in the failure to prove the elements of Aggravated Assault, we conclude that the above-quoted instruction cannot logically be construed to require that the jury consider the inferior offense of Aggravated Assault if the elements of Felonious Assault had not been proven.
Free next quotes the following portion of an instruction to which she objects on the grounds that it is "extremely confusing:" "your [sic] suggested not to continue to deliberate on the offense, lesser included offense of negligent assault as to Count 1." If this were an isolated instruction, we would agree with Free's characterization. However, our reading of this portion of the transcript of this passage leads us to conclude that it is merely a typographical error. Having read the entire jury charge, we note that the trial court read a title, or heading, at the beginning of each instruction topic. The above sentence, in our view, must be read as follows:
 your [sic] suggested not to continue to deliberate on the offense.
Lesser included offense of negligent assault as to Count 1.
The first sentence was the conclusion of a prior topic, while the second sentence was merely the heading or title of the next instruction topic regarding the lesser-included offense. Thus, we find no error.
Free makes several objections in regard to the trial court's summary of potential verdicts. The first portion of the summary to which Free objects is as follows:
 If you find that the State failed to prove beyond a reasonable doubt that defendant knowingly caused physical harm to Derrick Smith on May 25, 1995, in Montgomery County, Ohio, by means of a deadly weapon, and you find that the defendant failed to prove by a preponderance of the evidence that she was acting in self-defense against Derrick Smith when she caused physical harm to Derrick Smith, and you further find that the State has proved beyond a reasonable doubt each and every element of the charge of negligent assault, the lesser included offense, then your verdict must be guilty as to the lesser included offense of negligent assault. If you find in this case however, if you find the State failed to prove beyond a reasonable doubt each and every element of the charge of negligent assault, then your verdict must be not guilty as to the lesser included offense of not guilty [sic] of negligent assault.
Free argues that "this is an inaccurate way to instruct the jury on a lesser included offense, and the instruction leaves out the prospect of aggravated assault altogether." We can find no error. This passage is merely a small portion of the trial court's summary of possible verdicts. It does not improperly omit Aggravated Assault, because that offense was discussed in a prior portion of the summary. Furthermore, as previously stated, if the jury found that the State failed to prove the essential elements of Felonious Assault, then it could not consider Aggravated Assault; thus the jury would then need to consider the lesser-included offense as requested by Free. Finally, we conclude that while this summary is somewhat repetitive, it is not error.
Free next objects to a portion of the instruction summary indicating that the jury was permitted to find Free guilty of Negligent Assault against Gibson even if she was acting in self-defense against Smith. She argues that this is an inaccurate statement of the law. In support, she cites State v. Clifton
(1972), 32 Ohio App.2d 284, in which the First District Court of Appeals held that "[t]he accidental killing of an innocent party by one acting in self-defense against an attack by another is not a crime and the failure of a court to so instruct a jury deliberating the guilt of one accused of manslaughter of such a party is error." Id., at paragraph one of the syllabus.
We find Clifton distinguishable from the case sub judice. First, Clifton was decided prior to the effective date of the Negligent Assault statute, and thus, that court's holding did not anticipate that a person could be found criminally negligent. Second, the court spoke only in regard to "accidental" killings, and made no mention of negligent killings. Therefore, we find the holding to be limited, and we decline to enlarge the case to encompass negligent killings or negligent assaults.
Moreover, we find this case to be more in line with the facts of State v. Williams (1981), 2 Ohio App.3d 289. In Williams, the defendant and another man were involved in an argument which ended when the defendant fired shots at the other man. Id. The body of an innocent third-party was found a short time later in an apartment overlooking the scene of the argument; the third-party had sustained a fatal bullet wound to the head. Id. At trial, the defendant requested instructions on Negligent Homicide as well as self-defense. In holding that the defendant was entitled to both instructions, that court stated as follow:
 * * * We believe that it is possible for one to act both intentionally and negligently at the same time.
 Though Ohio has not yet been faced with such a case, based on cases in other states, it seems a hunter who shot his partner while aiming at a deer would be charged under R.C. 2903.05, (negligent homicide). See Goldsmith, Involuntary Manslaughter: Review and Commentary on Ohio Law, 40 Ohio St. L.J. 569, 592. In hunting as in self-defense the gun is discharged legally and intentionally. In this case, as in the hunting accident, the crime occurs when the bullet, through negligence, flies afoul and strikes an unintended victim. * * * Here an innocent third person fell victim to defendant's action. The jury might properly have found that defendant was justified in defending himself, which would preclude a conviction for involuntary manslaughter by negating the necessary felony offense, but they also could have found defendant negligent if he defended himself without due regard for the safety of others. Thus, he could be guilty of negligent homicide.
Id., at 290.
We agree with the holding in Williams, and note that we too have found it possible that a defendant found not guilty of Felonious Assault by reason of self-defense, could still be found guilty of Negligent Homicide. See State v. Bogle (May 17, 1996), Montgomery App. No. 14774, unreported. Therefore, we conclude that the trial court did not err by giving the above instruction.
In a related claim of error, Free claims that the trial court erred because it failed to instruct that the accidental injury to another while acting in self-defense is a complete defense. Free requested that the trial court give the following definition on the defense of accident, which is set forth in OJI (1997), § 411.01, p. 69:
 An accidental result is one that occurs unintentionally and without any design or privilege to bring it about. An accident is a mere physical happening or event, out of the ordinary course of things and not reasonably anticipated as a natural or probable result of a lawful act.
"A [crime] is not excusable on the basis of accident unless it appears from the evidence that at the time of the [crime] the offender was acting in a lawful manner and without negligence."State v. Hopfer (1996), 112 Ohio App.3d 521, 564, quoting Statev. Moore (1991), 74 Ohio App.3d 334, 344. Had Free been acting in self-defense, as she claims, then her actions would have been legal and intentional. However, the jury clearly rejected her claim of self-defense both as to Smith and as to Gibson. At the very least, Free's actions were negligent. She admitted that she purposely accelerated the van. She drove out of the alley onto a busy residential street on a warm day when people were out on the street without stopping or slowing to see if there was any vehicle or pedestrian traffic. The evidence shows that she was traveling anywhere from 24 to 50 miles per hour when she hit Gibson. Accordingly, the evidence presented at trial does not support the defense of accident, and the trial court did not err by failing to instruct on this matter.
Finally, Free asserts that the trial court erred because it instructed the jury that in deciding whether the State proved that Free knowingly caused physical harm to Smith it was to consider whether Free had proved the defense of self-defense by a preponderance of the evidence. Instead, Free maintains that the trial court "should have stated that the issue of self-defense is a complete defense and not a mere consideration of the jury to determining whether felonious assault was committed." We find that the trial court did in fact instruct the jury that if it determined that Free acted in self-defense then it could not find her guilty of Felonious Assault. The instruction was crystal clear. We find no error.
We conclude that the trial court did not err in instructing the jury. Accordingly, Free's Fourth Assignment of Error is overruled.
 VI
All of Free's Assignments of Error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.
Copies mailed to:
Carley J. Ingram
Robert Coughlin
Hon. Patrick Foley
[1] Testimony regarding the speed of Free's vehicle at the time she hit Smith and Gibson was conflicting. The State presented the testimony of two witnesses who observed the van hitting both Smith and Gibson. One witness testified that he thought the van was traveling about 35 to 50 miles per hour, while the other testified that the van was traveling 45 miles per hour. An expert witness testified on behalf of the defense that the van was traveling twelve to sixteen miles per hour when it hit Smith, and 24 to 27 miles per hour when it hit Gibson.
[2] Free contends that since she was willing to stipulate that Gibson was physically harmed, the State should not have been allowed to display the child's injured leg before the jury. However, this argument ignores the clear weight of authority regarding the prosecution's right to present its case as it sees fit. The United States Supreme Court has quite succinctly held that the prosecution is not required to accept such a stipulation, but rather is permitted to prove the elements of its case in the manner that it determines appropriate. See OldChief v. United States (1997), ___ U.S. ___, 117 S.Ct. 644,653-654; Singer v. United States (1965), 380 U.S. 24, 35.
[3] Although not clearly argued, it appears that Free also claims that the trial court did not permit her to introduce a police report dated October 20, 1987, which she contends would serve to impeach Smith's credibility. Free contends that Smith untruthfully denied having any "problems with the law" other than incidents involving her. She states that she attempted to dispute this testimony during her cross-examination of Smith, and that she proffered an arrest report dated October 20, 1987, directly contradicting Smith's claim. Free's argument implies that she was not allowed to examine Smith about his testimony, and that she was not allowed to introduce the report. However, our review of the record indicates that the police report was admitted into evidence as defense exhibit "XX." It further reveals that Smith admitted that he had been arrested in 1987 and that the arrest did not involve Free. Thus, we conclude that there was no error.